IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUBRY REA JOHNSON,<br><br>              Petitioner,<br><br>       v.<br><br>A. GILL, Warden,<br><br>              Respondent. | Case No. 1:12-cv-02043 AWI MJS (HC)<br><br>**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner is a federal prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner claims entitlement to a credit against his federal sentence for time served in and out of state custody prior to serving his sentence for his federal convictions. (See Pet., ECF No. 1.)

I.    **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

The instant petition does not challenge Petitioner's conviction. Rather, Petitioner contends that the Bureau of Prisons ("BOP") is executing Petitioner's sentence in a way that violates federal law because the BOP refuses to give Petitioner credit for time spent in state custody and time spent when erroneously released from state custody prior to serving his federal sentence. The relevant facts of the case are not in material dispute. Respondent's recitation of the facts is as follows[1]:

---

[1] The Court notes that the following recitation is provided, not for Respondent's interpretation of
(continued…)

1

**A. Initial Arrest and Imposition of State Sentences**

On February 13, 2007, Petitioner was arrested by local authorities in Texas on charges in four different matters: (1) Fraud Use/Possession of Identifying Information (Case No. 110434701010, Harris County, Texas) ("First State Court Case"); (2) Probation Violation Warrant for Aggravated Robbery (Case No. 949865, Harris County, Texas) ("Second State Court Case"), and (3) Fraudulent Use/Possession of Identifying Information (Case Nos. 43918 and 43919, Fort Bend County, Texas) ("Third and Fourth State Court Cases"). See Davis Decl. ¶ 3. The charge in the First State Court Case was later dismissed. Id.

On June 7, 2007, while still in state custody, Petitioner was sentenced in the Second State Court Case (Case No. 949865) by the State of Texas to a 6-year term of imprisonment for Aggravated Robbery. Davis Decl. ¶ 5. On July 10, 2007, he was transferred to the Texas Department of Criminal Justice (TDCJ), the state prison system, to serve out his state sentence. Id. ¶ 7.

On August 14, 2007, Petitioner was transferred from TDCJ to Fort Bend County, Texas, on pending charges in the Third and Fourth State Court Cases (Case Nos. 43918 and 43919). On August 20, 2007, the petitioner was sentenced by the State of Texas to a 12-month concurrent term in both cases. Davis Decl. ¶ 8.

**B. Petitioner Enters Federal Custody on Writ**

On August 29, 2007, Petitioner was temporarily released from state custody to the United States Marshals Service (USMS) via writ of Habeas Corpus Ad Prosequendum. Id. ¶ 9. He was in USMS custody attending to the federal court case brought against him in United States District Court, Southern District of Texas, in Case No. 4:07CR00174-001 ("Federal Case"). On June 29, 2007, Petitioner pleaded guilty to Aiding and Abetting Access Device Fraud, in violation of 18 U.S.C. §§ 1029(a)(2); and Aiding and Abetting Aggravated Identity Theft, in violation of 18 U.S.C. §§ 1028A, 2. Davis Decl. ¶ 11, Attach. 8. Petitioner was sentenced to 88-months imprisonment in the Federal Case on February 29, 2013. Id. According to the judge's order, the federal term was to run consecutive to the 6-year sentence he received in the Second State Court Case. Id.

**C. First Error and Return to State Custody**

While he remained in federal custody, and before he was sentenced in his Federal Case, the State of Texas satisfied Petitioner's 12-month sentence in his Third and Fourth State Court Cases (Case Nos. 43918 and 43919). Petitioner's 12-month concurrent sentences were extinguished on February 14, 2008—one year after his February 13, 2007

---

(…continued)
the application of Federal law to Petitioner's federal sentence, but to describe the events that occurred regarding Petitioner's custody, including transfers from state to federal custody and back, and time spent at liberty. To the extent that Respondent asserts legal conclusions regarding the effect of the various movements of Petitioner to his federal custody calculation, those are not the conclusions or holdings of this Court.

arrest. Thus, the full 12-months he served after his initial arrest by state authorities was credited to his state sentence, including the time he spent in USMS custody on the writ ad prosequendum. Davis Decl. ¶ 10, Attach. 4.

At that time, the USMS erroneously recorded that the Petitioner's state obligation had been satisfied, overlooking his yet unsatisfied six-year term from his Second State Court Case (Case No. 949865). Id. ¶ 10. Thus, instead of returning Petitioner to state custody to finish serving his six-year state sentence, the USMS requested designation to a federal facility, and Petitioner was erroneously designated to FCI Beaumont, Texas. Davis Decl. ¶ 12, Attachs. 6, 9. Although he was housed at a federal institution during this time, however, he remained in the primary custody of the State of Texas, and was in federal custody only pursuant to the writ of Habeas Corpus Ad Prosequendum. Id.

As soon as the BOP became aware of the error, efforts were made to return the inmate to state custody. Pet.; Davis Decl., Attach. 6 (letter dated July 8, 2008). Petitioner was returned from BOP to USMS custody on July 31, 2008. The USMS housed Petitioner at Federal Detention Center (FDC) Houston until August 8, 2008, and at the Montgomery County Jail (Joe Corley Detention Center) until August 11, 2008. See Davis Decl. ¶ 13. Petitioner admits he was then transferred back to state custody at this time to serve his state sentence on his Second State Court Case (Case No. 949865). Pet. at 4.

**D. New State Charges, Second Error, and Return to State Custody**

While he was housed in state custody serving his state sentence, Petitioner was moved to the custody of the Dallas County Sheriff's Department on additional state charges in a Fifth State Court Case. See Pet., Ex. A. Those charges were later dismissed. Rather than return him to TDCJ to serve out the remainder of his existing state sentence, however, the Dallas County Sheriff's Department erroneously transferred him to the USMS on August 7, 2009 based on the federal detainer filed in his Federal Court Case. Davis Decl. ¶ 14, Attach. 7. After discovering the error, on November 3, 2009, USMS returned Petitioner to the Dallas County Sheriff's Department. Id.

**E. Third Error and Return to State Custody**

On December 9, 2009, the Dallas County Sheriff's Department again erroneously informed USMS that the inmate had completed his state sentence, and the State had released their hold. Pet., Ex. A. On December 14, 2009, Petitioner was again transferred to the custody of the USMS. Davis Decl. ¶ 15. The USMS again requested designation to a federal facility.

At this point, the BOP felt it was necessary to inquire as to whether the Petitioner had completed his sentence, based on the previous errors. State authorities again erroneously informed the BOP that Petitioner had completed his state sentence. Based on that information, BOP informed the USMS the inmate would return to Beaumont Medium. Pet., Ex. B.

He was not actually designated or transferred to Beaumont at that time. Instead, records indicate he remained in USMS custody until

3

February 12, 2010. It appears that USMS became aware that the Petitioner had not completed his state sentence, because on that date he was again returned to the TDCJ to complete service of his six-year term for his Second State Court Case. See Davis Decl. ¶ 15, Attach. 7.

### F. Fourth Error and Release

On February 23, 2011, approximately four years after his arrest, Petitioner paroled from the TDCJ from the 6-year term of imprisonment in his Second State Court Case. Accordingly, all of the time Petitioner had spent in custody, from February 13, 2007, through February 23, 2011, was credited against his six-year state sentence. Davis Decl. ¶ 16.

With his all of his state sentences now complete, Petitioner should have been transferred to federal custody to begin service of his federal sentence, which was ordered to run consecutive to the state sentence. Instead, he was erroneously released from custody. Id., Attach. 10.

### G. Federal Sentence Begins

On June 6, 2011, the Petitioner was arrested by the USMS. Id. ¶ 17, Attach. 11. He was held at FDC Houston for service of his federal sentence. Id.

(Answer, ECF No. 25 at 4-8.)

In this petition, Petitioner challenges the calculations of his custody credits. Specifically, Petitioner asserts that he was not provided credit for the time spent in federal custody starting on May 3, 2008. (See Pet. at 2-3.) Petitioner also asserts that the relevant federal sentencing statute is ambiguous and the rule of lenity should apply to construe any ambiguities in his favor. (Pet. at 6, 24-30.) Finally, Petitioner asserts that he should have received credit to his sentence while he was incorrectly released from custody and remained at liberty. (Id. at 6, 30.)

**II.     JURISDICTION**

   **A.     Subject Matter Jurisdiction**

Relief by way of a writ of habeas corpus extends to a prisoner in custody under the authority of the United States who shows that the custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3). Although a federal prisoner who challenges the validity or constitutionality of his conviction must file a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255, a federal prisoner challenging the manner, location, or conditions of the execution of a sentence must bring a petition for

1 writ of habeas corpus under 28 U.S.C. § 2241. Hernandez v. Campbell, 204 F.3d 861, 864-65 (9th Cir. 2000).

Petitioner asserts that the Bureau of Prisons improperly calculated his prior custody credits. "Habeas corpus jurisdiction is available under 28 U.S.C. section 2241 for a prisoner's claims that he has been denied good time credits without due process of law." Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) (citing Preiser v. Rodriguez, 411 U.S. 475, 487-88 (1973)). Accordingly, the Court concludes that it has subject matter jurisdiction over the petition.

**B.     Jurisdiction Over the Person**

Title 28 U.S.C. § 2241(a) provides that writs of habeas corpus may be granted by the district courts "within their respective jurisdictions." A writ of habeas corpus operates not upon the prisoner, but upon the prisoner's custodian. Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 494-495 (1973). A petitioner filing a petition for writ of habeas corpus under § 2241 must file the petition in the judicial district of the Petitioner's custodian. Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990). The warden of the penitentiary where a prisoner is confined constitutes the custodian who must be named in the petition, and the petition must be filed in the district of confinement. Id.; Rumsfeld v. Padilla, 542 U.S. 426, 446-47 (2004). It is sufficient if the custodian is in the territorial jurisdiction of the court at the time the petition is filed; transfer of the petitioner thereafter does not defeat personal jurisdiction that has once been properly established. Ahrens v. Clark, 335 U.S. 188, 193, 68 S. Ct. 1443, 92 L. Ed. 1898 (1948); Francis v. Rison, 894 F.2d 353, 354 (9th Cir. 1990). A failure to name and serve the custodian deprives the Court of personal jurisdiction. Johnson v. Reilly, 349 F.3d 1149, 1153 (9th Cir. 2003).

Petitioner was incarcerated at the Federal Correctional Institution Mendota at the time of filing. Federal Correctional Institution Mendota is located within the Eastern District of California. Accordingly, the Court concludes that it has personal jurisdiction over the custodian as Petitioner was confined in the district at the time of filing. It is noted that Petitioner has since been transferred to Oakdale Federal Correctional Institution in

Oakdale, Louisiana. (ECF No. 32.)

### III. ANALYSIS

#### A. Claims One and Two: Credit for Time Spent in State Custody

Petitioner seeks custody credit for the time served in State custody, from May 3, 2008 to February 12, 2010. (Pet. at 2-4.) Petitioner asserts that at that time, federal authorities had primary jurisdiction over him and that the state of Texas had relinquished its priority of jurisdiction. Petitioner asserts that the time should be credited to his federal sentence.

Respondent asserts that Petitioner's federal sentence commenced when Petitioner was in federal custody beginning on June 6, 2011, and Petitioner's temporary transfers to federal custody during the duration of his state sentence did not serve to commence the running of his federal sentence.

#### 1. Commencement of Federal Sentence

The authority to compute a federal prisoner's sentence is delegated to the United States Attorney General, who exercises this authority through the U.S. Bureau of Prisons ("BOP"). United States v. Wilson, 503 U.S. 329, 334-35 (1992). "Computing a federal sentence requires two separate determinations: first, when the sentence commences; and, second, to what extent the defendant in question may receive credit for any time already spent in custody." United States v. Smith, 812 F. Supp. 368, 370 (E.D. N.Y. 1993). A federal sentence commences "on the date the defendant is received in custody . . . to commence service of sentence at the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). In this regard, the Ninth Circuit has recently joined other circuits in noting

> that courts have interpreted § 3585(a) to mean that a federal sentence cannot begin before the defendant has been sentenced in federal court. See United States v. Gonzalez, 192 F.3d 350, 355 (2d Cir. 1999) (holding that a district court cannot "backdate" a federal sentence to the beginning of a state prison term on related state charges.); United States v. Flores, 616 F.2d 840, 841 (5th Cir. 1980) ("[A] federal sentence cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served.")

Schleining v. Thomas, 642 F.3d 1242, 1244 (9th Cir. 2011).

Federal custody does not begin until the state authorities relinquish the prisoner upon satisfaction of the state obligation. Del Guzzi v. United States, 980 F.2d 1269, 1270-71 (9th Cir. 1992). "Normally, the sovereign which first arrests an individual acquires priority of jurisdiction for purposes of trial, sentencing, and incarceration." Reynolds v. Thomas, 603 F.3d 1144, 1152 (9th Cir. 2010) (internal quotation marks omitted) (citation omitted), overruled on other grounds by Setser v. United States, 132 S.Ct. 1463, 1473, 182 L.Ed.2d 455 (2012); see also Taylor v. Reno, 164 F.3d 440, 444 n.1 (9th Cir. 1998). This priority of jurisdiction is often referred to as "primary jurisdiction." Taylor, 164 F.3d at 444 n. 1. "As a general rule, the first sovereign to arrest a defendant has priority of jurisdiction for trial, sentencing, and incarceration." Thomas v. Brewer, 923 F.2d 1361, 1365 (9th Cir. 1991). Additionally, "[w]hen an accused is transferred pursuant to a writ of habeas corpus ad prosequendum he is considered to be 'on loan' to the federal authorities so that the sending state's jurisdiction over the accused continues uninterruptedly." Thomas, 923 F.2d at 1367 (9th Cir. 1991) (quoting Crawford v. Jackson, 589 F.2d 693, 695, 191 U.S. App. D.C. 170 (D.C. Cir. 1978)).

**2.     Time Spent in Federal Custody While Awaiting Prosecution**

Petitioner's claim that he should be entitled to credit for the time spent in federal custody when he was produced for prosecution in federal court pursuant to a federal writ of habeas corpus ad prosequendum on May 3, 2008 is without merit. The production of a defendant in state custody to a federal court pursuant to a writ of habeas corpus ad prosequendum does not constitute the commencement of a sentence under federal law nor trigger the earning of federal credits. Schleining v. Thomas, 642 F.3d 1242, 1243 n.1 (9th Cir. 2011) (temporary transfer of a prisoner from state prison to the federal custody for purposes of federal prosecution does not interrupt his state custody); Reynolds v. Thomas, 603 F.3d 1144, 1152 (9th Cir. 2010) (noting that the fact that Petitioner was brought before the federal court pursuant to a writ of habeas corpus ad prosequendum indicated that the state had primary jurisdiction over him); Thomas v. Brewer, 923 F.2d

1361, 1365 (9th Cir. 1991).

Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner upon satisfaction of the state term. Taylor, 164 F.3d at 445; Thomas, 923 F.2d at 1366-67. "When an accused [in state custody] is transferred [to federal custody] pursuant to a writ of habeas corpus ad prosequendeum he is considered to be 'on loan' to the federal authorities so that the sending state's jurisdiction over the accused continues uninterruptedly." Thomas, 923 F.3d at 1367, quoting Crawford v. Jackson, 589 F.2d 693, 695 (D.C. Cir. 1978).

Thus, in this case, the State of Texas had primary jurisdiction over Petitioner from August 29, 2007, to August 11, 2008, while Petitioner was presented to federal court to be prosecuted for his federal offenses. Texas retained jurisdiction over Petitioner despite his actual custody by federal authorities pursuant to a writ of habeas corpus ad prosequendum. Accordingly, Petitioner was not entitled to earn federal custody credits during that period. See 18 U.S.C. § 3585(a). Petitioner argues that under Green v. Woodring, 694 F. Supp. 2d 1115, 1120 (C.D. Cal. 2009), he is entitled to credit towards his federal sentence, even though that time was calculated towards his state sentence. In Green, the court found that the petitioner "remained in state custody, legally and primarily, pursuant to the writ ad prosequendum" despite his transfer to federal custody to stand trial, and was not entitled to credit towards his federal sentence. Id. Petitioner's alternative reading of Green is not correct, nor is it supported by relevant federal law.

Moreover, § 3585(b) expressly prohibits an award of federal credits where the period of detention was already "credited against another sentence." § 3585(b). It is undisputed that the State of Texas credited Petitioner with state credits during the period from August 29, 2007, to August 11, 2008 when he was transferred to federal custody to face charges. Thus, federal law precludes any award of double credits to Petitioner for that same period. See United States v. Wilson, 503 U.S. 329, 337, 112 S.Ct. at 1351 (1992) ("Congress made clear that a defendant could not receive double credit for his

detention time."); United States v. Von Willie, 59 F.3d 922, 930-931 (9th Cir. 1995). Thus, under section 3585(b), Petitioner is not entitled to custody credit as it was applied toward his state sentences. For the reasons set forth above, the Court finds Petitioner first claim is not entitled to habeas corpus relief.

### 3.   Time Spent in Federal Custody Due to Erroneous Transfers

Petitioner argues that the State of Texas relinquished primary jurisdiction over him on the two instances he was erroneously released to federal custody while serving his state sentence.

Some courts have held that when a state prisoner is mistakenly transferred to a federal facility, the state relinquishes jurisdiction over the prisoner and the federal sentence begins. See e.g., Stephens v. Sabol, 539 F. Supp. 2d 489 (D. Mass. 2008) (transport of inmate by U.S. Marshal to federal custody to begin a federal sentence after state officials affirmatively, albeit erroneously, had informed the USMS that inmate had completed his state sentence constituted relinquishment of primary jurisidiction); Weekes v. Fleming, 301 F.3d 1175, 1180-1181 (10th Cir. 2002) (if a prisoner in state primary jurisdiction not under a writ of habeas corpus ad prosequendum is delivered to federal authorities, the state relinquishes jurisdiction); Luther v. Vanyur, 14 F. Supp. 2d 773, 775-776 (E.D. N.C 1997) (observing a federal sentence begins on the date a prisoner is received in custody by the United States Marshal).

This Court is not aware of a federal statute or Ninth Circuit precedent on point. However, the BOP has issued program statements addressing this specific situation. Thus, notwithstanding the absence of statutory and Ninth Circuit law, this court is persuaded that BOP policy dictates that Petitioner is not entitled to an earlier commencement of his federal sentence in light of the improper transfers to federal custody.  See, United States v. Wilson, 503 U.S. 329, 334-35 (1992) (United States Attorney General and the BOP are delegated the authority to compute a federal prisoner's sentence.).

According to BOP policy,

> When it has been determined an inmate was committed improperly to federal custody and primary jurisdiction resides with a state sovereign (i.e., the inmate was under jurisdiction of the federal sentencing court on the basis of a writ of habeas corpus ad prosequendum), institution staff . . . will make every effort to return the inmate to state custody. A return to the state means that the federal sentence should be considered as not having commenced since transfer to the Bureau was in error and the prisoner should have returned to the state after sentencing as a required condition of the federal writ.

Fed. Bureau Prisons, Designation of State Inst. for Serv. of Fed. Sentence at 11-12, Program Statement 5160.05 (Jan. 16, 2003).  Even if Chevron deference does not apply, because an agency rule or decision "is not within an area of express delegation of authority or does not purport to have the force of law, it is entitled to a measure of deference proportional to its power to persuade, in accordance with the principles set forth in Skidmore v. Swift & Co., 323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 124 (1944)." Tablada v. Thomas, 533 F.3d 800, 806 (9th Cir. 2008). Under this level of review, a court should "look to the process the agency used to arrive at its decision." Id. "Among the factors [to be] considered are the interpretation's thoroughness, rational validity, consistency with prior and subsequent pronouncements, the logic and expertness' of an agency decision, the care used in reaching the decision, as well as the formality of the process used." Id. (internal citations and quotations omitted).

   Program Statement 5160.05 reveals the BOP's interpretation of the application of § 3585(a) to the instance of improper commitment to federal custody. Taking into consideration the common law rule of primary custody which existed at the time Congress enacted Section 3585(a), it is clear that the BOP considers a sentence to a term of imprisonment to commence on the date the defendant is correctly deemed by the BOP to have been received in the BOP's primary custody. Under such an interpretation, improper commitments would not affect the date of commencement of the federal sentence.

   The interpretation of the statute by the BOP, as described in the Program Statement, is not unreasonable. Other courts are in agreement. See, Binford v. United States; 436 F.3d 1252 (10th Cir. 2006) (finding erroneous designation did not commence

the sentence); Free v. Miles, 333 F.3d 550 (5th Cir. 2003) (same); Cannon v. Deboo, NO. CIV.A. 5:08CV69, 2009 U.S. Dist. LEXIS 20595, 2009 WL 692148 (N.D.W.Va. March 13, 2009) (same); Harris v. Quintana, 2012 U.S. Dist. LEXIS 101100 (W.D. Pa. July 20, 2012).

Absent controlling Ninth Circuit law on point, this court is persuaded that "a prisoner's time of incarceration should be governed by the sentence, not by administrative error." See Thomas v. Deboo, 2010 U.S. Dist. LEXIS 34781, 2010 WL 1440465, at *3 (N.D.W. Va. 2010) ("Once the petitioner was received into federal custody, his record was reviewed and the BOP determined that primary jurisdiction remained with the state and that it was not proper to house the petitioner in a federal facility. Thus, the BOP returned the petitioner to state custody immediately upon its determination that he was erroneously in federal custody.").

In this case, Petitioner was erroneously transferred to federal custody two additional times after his first transfer to face federal charges. Petitioner was charged for a fifth time in state court, and although the charges were dismissed, the Dallas County Sherriff's Department erroneously transferred Petitioner to federal custody on August 7, 2009. After discovering the error, Petitioner was again returned to state custody on November 3, 2009. A month later, he was again erroneously transported to federal custody on December 9, 2009. After discovering the error, he was returned to state custody on February 12, 2010.

From the record, it is clear that the State of Texas had primary jurisdiction over Petitioner through February 23, 2011, when he was released from state custody. Despite the fact that Petitioner was provided to federal authorities due to administrative error of state correctional officials, it is clear from the record that Petitioner remained in the primary jurisdiction of the state during such transfers, and that such time was counted against his state sentences.

Based on the record, the first time that the Federal Bureau of Prisons obtained physical custody of Petitioner after the expiration of his state sentences was when he

11

was arrested on June 6, 2011. Thus, the BOP properly calculated Petitioner's federal sentence as having commenced on June 6, 2011, the date petitioner was received into exclusive federal custody for service of his federal sentence. See 18 U.S.C. § 3585(a).

### B.     Claim Three: Rule of Lenity

Under the rule of lenity, "ambiguous criminal laws [must] be interpreted in favor of the defendant subjected to them." United States v. Santos, 128 S. Ct. 2020, 170 L. Ed. 2d 912 (2008). The rule only applies if, "after considering text, structure, history and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended. Abramski v. United States, 134 S. Ct. 2259, 2272 (2014).

Petitioner argues that the rule of lenity should apply to 18 U.S.C. § 3585(b) due to ambiguity with regard of the application of the statue to the commencement of federal sentences when a prisoner is improperly transferred to federal custody during the pendency of the state sentence. The statute governing credits and the calculation of a federal term of imprisonment provides as follows:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences -
>
> (1) as a result of the offense for which the sentence is imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585(b).

Section 3585(b) is not ambiguous since the statutory text clearly explains that defendants shall not be provided credit for time in detention that has been credited against another sentence. Even if it were considered ambiguous, the BOP's interpretation of the statute as explained in the policy statement is reasonable. As the statute was not ambiguous and any ambiguity could be resolved through reference to the BOP's interpretation, the rule of lenity is inapplicable. Petitioner's third claim is

without merit.

### C. Claim Four: Credit for Time at Liberty

Petitioner, in his final claim, requests credit for time spent at liberty from February 23, 2011 through June 6, 2011. Respondent notes in his response that Petitioner was entitled to, and already received prior custody credit for the time at liberty. (Answer at 18, citing Clark v. Floyd, 80 F.3d 371, 374 (9th Cir. 1996).) Records provided by Respondent confirm that Petitioner was provided credit during this time. (Decl. of Henry Davis, Attach. 11, ECF No. 25-1.) As Petitioner has been provided the relief requested, the Court recommends the claim be denied as moot.

## IV. CONCLUSION AND RECOMMENDATION

In light of the above analysis, it is RECOMMENDED that the petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within fourteen (14) days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(c).

///
///
///
///
///
///
///

Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:  April 30, 2015              /s/ *Michael J. Seng*
                                    UNITED STATES MAGISTRATE JUDGE